UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GULLIVER'S TAVERN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK'S OF BROCKTON, INC.<br><br>Defendant. | Civil Action No.  1:22-cv-10653-IT<br><br>**JURY TRIAL DEMANDED** |

**FRANK'S OF BROCKTON, INC.'S ANSWER AND COUNTERCLAIMS**

Defendant Frank's of Boston, Inc. ("Defendant"), answers the numbered paragraphs of Plaintiff's Complaint, as follows:

## NATURE OF THE ACTION

1. Defendant admits that the Complaint alleges breach of contract and trademark infringement but denies all other allegations contained in Paragraph 1 of the Complaint.

## PARTIES

2. Defendant is without information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

3. Admit.

## JURISDICTION AND VENUE

4. No answer is required to the allegations of this paragraph, which consist merely of conclusions of law.  To the extent an answer is required, Defendant denies the allegations of this paragraph.

5. No answer is required to the allegations of this paragraph, which consist merely of conclusions of law.  To the extent an answer is required, Defendant denies the

allegations of this paragraph.

## RELEVANT FACTS

6. Defendant admits that Exhibit 1 is a true and accurate copy of Registration No. 2809938. Defendant denies the remaining allegations of this paragraph.

7. Admitted.

8. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 and therefore denies them.

9. Denied.

10. Admitted that Franks operates an adult entertainment club in Brockton call the Boardroom Cabaret, otherwise denied.

11. Denied.

12. Admitted that Franks made weekly payments to Gullivers for more than twenty years continuing until March 20, 2020, otherwise denied.

13. Defendant is without information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies those allegations.

14. Admitted that Plaintiff sent a letter, through prior counsel, to Defendant In August 2021. Defendant denies the remaining allegations in this paragraph.

15. Admitted that Defendant, through counsel, sent a letter to counsel for Plaintiff on August 31, 2021, and that a true and accurate copy of the letter is attached as Exhibit 2 of the Complaint. As to all remaining allegations in this paragraph, the letter speaks for itself.

16. Denied.

17. Denied.

18. Admitted that Plaintiff, through new counsel, sent a letter to counsel for Defendant and that the letter attached as Exhibit 5 is a true and accurate copy of the letter. Defendant denies that this letter was sent on February 15, 2022. As to all remaining allegations in this paragraph, the letter speaks for itself.

19. Denied.

20. Denied.

21. Denied.

## COUNT ONE
### (Breach of Contract)

22. Defendant incorporates all paragraphs above as if set forth herein.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

## COUNT TWO
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

27. Defendant incorporates all paragraphs above as if set forth herein.

28. Denied.

29. No answer is required to the allegations of this paragraph, which consist merely of conclusions of law. To the extent an answer is required, Defendant denies the allegations of this paragraph.

30. Denied.

31. Denied.

32. Denied.

## COUNT THREE
### (Trademark Infringement – 15 U.S.C. § 1114(1))

33. Denied

34. Denied.

35. Denied.

36. Denied.

## COUNT FOUR
### (State Trademark Infringement)

37. Defendant incorporates all paragraphs above as if set forth herein.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

## **AFFIRMATIVE AND OTHER DEFENSES**

Defendant reserves the right to rely upon any of the following or additional defenses to the extent such defenses are supported by information developed through discovery or evidence at trial. By asserting the following defenses, Defendant does not allege or admit it has the burden of proof or the burden of persuasion with respect to any of these matters:

1. Plaintiff's Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred, in whole or in part, by the doctrines of laches and estoppel because of Plaintiff's unreasonable delay in challenging Defendant's use of the allegedly infringing mark, which was prejudicial to Defendant.

3. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

4. Plaintiff's claims are barred, in whole or in part, by relevant statutes of limitation or repose.

5. Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of acquiescence, based on Plaintiff's conduct regarding Defendant's use of the allegedly infringing mark, which conduct was prejudicial to Defendant.

6. Defendant acted in good faith at all times.

7. Plaintiff has not established common law trademark rights in Massachusetts.

8. Whatever common law and federal trademark rights Plaintiff may have had have been abandoned.

9. Defendant has not infringed any applicable trademark.

10. The claims made in the Complaint are barred, in whole or in part, by reasons of third parties' use of the mark at issue.

11. Without admitting that the Complaint states a claim, there has been no damage in any amount, manner or at all by reason of any act alleged against Defendants in the Complaint.

12. The alleged injury or damage suffered by Plaintiff, if any, would be adequately compensated by damages. Accordingly, Plaintiff has a complete and adequate remedy at law and is not entitled to seek equitable relief.

13. Defendant reserves the right to assert additional defenses that it may discover in the course of this litigation.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Frank's of Brockton, Inc. pleads the following counterclaims against Plaintiff and Counterclaim Defendant Gulliver's Tavern, Inc.

## PARTIES

1. Frank's of Brockton, Inc. ("Franks") is a Massachusetts corporation having a principal place of business at 265 North Pearl Street, Brockton MA 02301.

2. Upon information and belief, Gulliver's Tavern, Inc. ("Gullivers") is a Rhode Island corporation having a principal place of business at 318 Chalkstone Ave., Providence RI 02301.

## JURISDICTION AND VENUE

3. This court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121, 28 U.S.C. §§1331, 1332 and 2201, and may exercise supplemental jurisdiction over state and common law claims under 28 U.S.C. §1367(a).

4. This court has personal jurisdiction over Gullivers by virtue of its having submitted to the jurisdiction of this Court by filing the underlying lawsuit.

5. Venue is proper under 28 U.S.C. §§ 1391.

## RELEVANT FACTS

6. Frank Caswell owned a building in which he operated a restaurant and dance club.

7. In or around 1994-1995, Mr. Caswell was approached by Thomas Tsoumas, one of the owners of Gullivers, about converting the dance club to an adult entertainment venue to be operated under the name "Foxy Lady." Mr. Caswell decided to do so, and by 1999 was ready to open the new venue.

8. Mr. Caswell made an oral agreement (the "1999 Oral Agreement ") with Mr. Tsoumas by which Mr. Caswell would name his club "Foxy Lady." For so long as the club was called "Foxy Lady," Franks would pay Gullivers $3000.00 per week. The two further agreed that, should Franks cease using the name "Foxy Lady" for the club, no further payments would be due. No other terms were discussed or agreed upon, and no reference was made to any trademark rights. The 1999 Oral Agreement was not reduced to a writing.

6

9.      The 1999 Oral Agreement did not include any rights for Gullivers to monitor Franks' use of the Foxy Lady mark, to establish and police any quality control measures with respect to Franks' club, or to otherwise affect the way that Franks operated the club under the name "Foxy Lady."

10.     The 1999 Oral Agreement did not include any agreement that any goodwill generated by Franks' use of the name would inure to the benefit of Gullivers.

11.     The 1999 Oral Agreement did not set forth any particular steps Franks would have to take to terminate the agreement. Instead the agreement would simply terminate once Franks ceased calling its club the "Foxy Lady."

12.     Franks began using the name "Foxy Lady" for its club in 1999, three years before Gullivers filed its application for a registration on the "Foxy Lady" mark and five years before Gullivers actually received a registration.

13.     For twenty years, Franks made the weekly payments to Mr. Tsoumas totaling more than $3 million.

14.     During that time, neither Mr. Tsoumas nor Gullivers ever informed Franks about any trademark applications or registrations.

15.     During that time, no one from Gullivers ever exercised any control over the way that Franks operated its club or the way it used the "Foxy Lady" name.

16.     In March, 2019, an attorney named Barry Miller contacted Mr. Caswell on behalf of Gullivers, looking to negotiate an increase in the weekly payments.

17.     On March 18, 2019, Attorney Miller sent a proposed "License Agreement," (the "2019 Proposal") to Franks. Attached as Exhibit 1 is a true and accurate copy of a fax from Attorney Miller to Franks including a copy of the 2019 Proposal.

18.     The 2019 Proposal sought to add clauses that would give Gullivers control over Franks' quality, use of the mark, and the like, which were not a part of the 1999 Oral Agreement.

7

The 2019 Proposal further sought to establish an automatically renewable one-year term and impose a requirement that termination must be delivered in writing and in advance, which were not a part of the 1999 Oral Agreement. The 2019 Proposal also sought to establish a royalty of $5,000.00 per week rather than the $3,000.00 per week that was established by the 1999 Oral Agreement.

19. Franks rejected the 2019 Proposal and continued to honor the 1999 Oral Agreement.

20. Gullivers raised no objections to Franks' continuing to name its club "Foxy Lady" from then through August 2021, and again did not seek to assert any control over Franks' usage of the name.

21. In March 2020, the State of Massachusetts ordered non-essential businesses to shut down in response to the COVID-19 pandemic. Franks was categorized as a non-essential business, and closed in early March, 2020.

22. Franks decided to take advantage of the closure to rebrand the club. Franks removed all "Foxy Lady" signage and ceased using "Foxy Lady" in its advertising.

23. Franks' made weekly payments up to the time the signage was removed and the name was no longer being used for the club. Franks ceased making weekly payments only after the name was no longer being used.

24. Franks took good-faith and reasonable steps to remove on-line references to the club that utilized the term "Foxy Lady" from its social media accounts.

25. Franks reopened the club on April 28, 2021 under the new name "Boardroom Cabaret."

26. For six months, Gullivers raised no objection to Franks' stopping payments upon its ceasing to use the "Foxy Lady" name.

27. On August 21, 2021, however, counsel for Gullivers sent Franks a letter asserting that Franks had not made a payment to Gullivers since February 2019 and demanding $366,000.00. A true and correct copy of this letter is attached hereto as Exhibit 2.

28. The August 21, 2021 letter made no reference to any usage of the "Foxy Lady" mark, either in the club itself or in its advertising during the time following Franks' cessation of using the name in March 2020.

29. Counsel for Franks responded on August 31, 2021, notifying Gullivers had made all required payments through March 31, 2020, and providing documentation of the same. Counsel also confirmed to Gullivers that Franks had ceased use of the FOXY LADY name upon having been shut down due to the COVID-19 closure of non-essential businesses.

30. On information and belief, a number of adult establishments throughout the country presently utilize or have in the past utilized the term "FOXY LADY" as part or all of their names, including establishments in West Virginia, Columbus and Atlanta Georgia, Kentucky, Louisiana, Oklahoma, Florida, Arkansas and Baltimore Maryland.

31. On information and belief, none of these establishments are or were licensed by Gullivers.

32. On information and belief, Gullivers knew or should reasonably have known of these establishments using the "Foxy Lady" mark but took no action to cease usage of the mark.

33. On information and belief, at least the Oklahoma establishment used the name "Foxy Lady" in connection with an adult entertainment club before Gullivers first began using the name.

34. On information and belief, Gullivers filed for a federal registration of the "Foxy Lady" mark on August 22, 2002, and obtained Registration No. 2809938 (the "'938 Registration.").

35. In connection with Gullivers' application, Thomas Tsoumas signed a statement asserting that "to the best of [his] knowledge and belief no other person, firm, corporation, or association has the right to use the [] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive…" This statement was made subject to the penalties, including potential jail time, for knowingly making a false statement as set forth in 18 U.S.C. § 1001.  A true and accurate copy of Gullivers' application is attached hereto as Exhibit 3.

36. Gullivers was represented by counsel, who filed the trademark application on Gullivers' behalf.

37. At the time Mr. Tsoumas signed and filed this statement in March 2002, Mr. Tsoumas knew that Franks had been using the mark for three years under the 1999 Oral Agreement, and that Franks' use of the mark was likely to cause confusion, mistake or to deceive.

38. Mr. Tsoumas' statement was knowingly false, and was made for the purpose of deceiving the United States Patent and Trademark Office into granting the registration on the mark.

39. On February 20, 2010 and again on January 30, 2014, Gullivers filed a Combined Declaration of Use and Application for Renewal of Registration of a Mark under Sections 8 & 9 ("Declarations of Use") with the United States Patent and Trademark Office.  True and Accurate copies of the Declarations of Use are attached hereto as Exhibit 4.

40. The Declarations of Use were made by Gullivers to maintain its federal trademark registration.

41. Gullivers attached specimens showing its purported use of the "Foxy Lady" mark in commerce, again a necessary step in maintaining the federal trademark registration.

42. In each of the Declarations of Use, Gullivers' specimens included usage of the "Foxy Lady" mark by Franks rather than usage by Gullivers.

43. Gullivers' Declarations of Use were each filed by counsel for Gullivers.

44. Gullivers included specimens showing Franks' usage despite knowing that any goodwill associated with usage of the mark by Franks did not inure to the benefit of Gullivers.

45. Gullivers knowingly passing off specimens showing Franks' usage of the mark as its own was done to deceive the United States Patent and Trademark Office into renewing Gullivers' federal registration.

## Count I

### Cancellation of the '938 Registration – Naked License

46. Franks incorporates by reference the allegations of paragraphs 1 - 45 above, as though fully set forth herein.

47. In 1999, Franks entered into the 1999 Oral Agreement with Gullivers to use the name "Foxy Lady" in connection with an adult entertainment club in Brockton, Massachusetts.

48. The 1999 Oral Agreement did not provide that any goodwill generated by Franks' use of the name would inure to Gullivers' benefit; did not provide any measures by which Gullivers could exert any control over Franks' usage of the name "Foxy Lady;" and did not provide any measures by which Gullivers could otherwise affect the way that Franks operated the club under the name "Foxy Lady."

49. Gullivers did not take any steps to actually exert control over Franks' use of the "Foxy Lady" name throughout the term of the 1999 Oral Agreement.

50. Gullivers' failure to control the quality of the licensed services means that the "Foxy Lady" mark no longer identifies the Gullivers as the single source of services offered under the mark and that the "Foxy Lady" mark no longer functions as a trademark.

51. As a result of Gullivers' naked license of the "Foxy Lady" mark to Franks, Gullivers' '936 Registration should be cancelled pursuant to 15 U.S.C. § 1064 and 15 U.S.C. § 1119.

## Count II
### Cancellation of the '938 Registration – Abandonment by Failure to Police

52. Franks incorporates by reference the allegations of paragraphs 1 - 51 above, as though fully set forth herein.

53. At least nine adult entertainment establishments in the United States in addition to the parties in this matter have used the phrase "Foxy Lady" as part or all of their names.

54. On information and belief, none of these establishments are or were licensed by Gullivers.

55. On information and belief, Gullivers knew or should reasonably have known of these establishments using the "Foxy Lady" mark but took no action to cease usage of the mark.

56. On information and belief, at least the Oklahoma establishment used the name "Foxy Lady" in connection with an adult entertainment club before Gullivers first began using the name.

57. Gullivers' failure to prevent unlicensed usage of the "Foxy Lady" mark means that the "Foxy Lady" mark no longer identifies the Gullivers as the single source of services offered under the mark and that the "Foxy Lady" mark no longer functions as a trademark.

58. As a result of Gullivers' failure to prevent unlicensed usage of the "Foxy Lady" mark to Franks, Gullivers' '936 Registration should be cancelled pursuant to 15 U.S.C. § 1064 and 15 U.S.C. § 1119.

## Count III
### Cancellation of the '938 Registration – Fraud on the Patent and Trademark Office

59. Franks incorporates by reference the allegations of paragraphs 1 - 58 above, as though fully set forth herein.

60. Thomas Tsoumas signed a statement on behalf of Gullivers asserting that "to the best of [his] knowledge and belief no other person, firm, corporation, or association has the right it use the [] mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive…"

61. At the time Mr. Tsoumas signed and filed this statement in March 2002, Mr. Tsoumas knew that Franks had been using the mark for three years under the 1999 Oral Agreement, and that Franks' use of the mark was likely to cause confusion, mistake or to deceive.

62. Mr. Tsoumas' statement was knowingly false and was made with the intent and purpose of deceiving the United States Patent and Trademark Office into allowing the '938 Registration.

63. Gullivers filed Declarations of Use in 2010 and 2014 in which Gullivers passed off specimens showing Franks' usage of the mark as its own.

64. Gullivers' passing off specimens showing Franks' usage of the mark as its own was knowingly false and was done with the intent and purpose of deceiving the United States Patent and Trademark Office into renewing the '938 Registration.

65. As a result of Gullivers' fraud on the United States Patent and Trademark Office, Gullivers' '936 Registration should be cancelled pursuant to 15 U.S.C. § 1064 and 15 U.S.C. § 1119.

## Count IV
**Invalidation of the 1999 Oral Agreement**

66. Franks incorporates by reference the allegations of paragraphs 1 - 65 above, as though fully set forth herein.

67. In 1999, Franks entered into the 1999 Oral Agreement with Gullivers to use the name "Foxy Lady" in connection with an adult entertainment club in Brockton, Massachusetts.

68. The 1999 Oral Agreement did not provide that any goodwill generated by Franks' use of the name would inure to Gullivers' benefit; did not provide any measures by which Gullivers could exert any control over Franks' usage of the name "Foxy Lady;" and did not provide any measures by which Gullivers could otherwise affect the way that Franks operated the club under the name "Foxy Lady."

69. Gullivers did not take any steps to actually exert control over Franks' use of the "Foxy Lady" name throughout the term of the 1999 Oral Agreement.

70. Gullivers' failure to obtain an assignment of the goodwill generated through Franks' use of the mark and its failure to control the quality of the licensed services through the 1999 Oral Agreement means that the 1999 Oral Agreement is not, and never was, a valid trademark license.

71. Franks was harmed as a result of the invalidity of the 1999 Oral Agreement in the amount of money paid by Franks to Gullivers.

72. As a result of Gullivers' failure to validly license the "Foxy Lady" mark to Franks under the 1999 Oral Agreement, the 1999 Oral Agreement should be declared invalid.

**PRAYER FOR RELIEF**

WHEREFORE, Franks prays for judgment as follows:

A. That Gullivers take nothing by way of his Complaint;

B. That judgment be entered in favor of Franks on all of Gullivers' purported claims;

C. Cancellation of U.S. Trademark Registration No. 2,809,938 pursuant to 15 U.S.C. § 1064 and 15 U.S.C. § 1119;

D. Award Franks all money paid to Gullivers under the 1999 Oral Agreement;

E. Award Franks its costs in this matter;

F. Award Franks its attorneys' fees, costs, and interest;

G. Award any other relief as the Court deems just and proper.

## JURY DEMAND

Franks hereby demands a jury trial on all issues so triable.

Dated: June 16, 2022

Respectfully submitted,

By: /s/ Thomas P. McNulty
Thomas P. McNulty (BBO No. 654,564)
**LANDO & ANASTASI, LLP**
60 State Street – 23rd Floor
Boston, MA 02109
Tel:   (617) 395-7000
Email:   tmcnulty@lalaw.com

*Attorney for Defendant Frank's of Brockton, Inc.*

**CERTIFICATE OF SERVICE**

      I certify that on June 16, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants.

                                                                 */s/ Thomas P. McNulty*
                                                                 Thomas P. McNulty